### THE SYLVAN DELL.

(District Court, E. D. New York. April 22, 1915.)

MARITIME LIENS ⊂⊃11, 12—REPAIRS AND SUPPLIES—VESSEL UNDER CHARTER.
　　Repairs and supplies furnished by libelant to a vessel *held* of a kind which might properly be and which were furnished on the credit of the vessel, and for which libelant was entitled to a lien, although the vessel was being operated by a charterer.
　　[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 15, 16; Dec. Dig. ⊂⊃11, 12.]

In Admiralty. Suit by the W. & A. Fletcher Company against the Sylvan Dell. Decree for libelant.

Robinson Leech, of New York City, for libelant.
Burlingham, Montgomery & Beecher and Roscoe H. Hupper, all of New York City, for claimant.

CHATFIELD, District Judge. There is no dispute that the items charged for were furnished, and there seems to be no issue that the amounts are reasonable and correct. The items themselves fall in four classes: First, those relating to the crosshead and piston, which seem to have been at the time undertaken by Mr. Fletcher as a rush order, as to which he did not seem entirely ready to proceed merely upon the authority of the man in charge, but attempted to get in communication with the owner. As to the repairs to the boiler, that seems to be a situation where the person in charge of the boat (in this case the engineer) had the authority, and Mr. Fletcher acted upon the necessity for the repairs and the direction of the engineer. As to the collision, in the same way, the repairs seem to have been necessary, and credit could be extended to the boat upon the authority of the person in charge. As to the fourth item, the supplies, some of the articles would seem to be—or a considerable portion of the items would seem to be—matters as to which, if there was anything to give notice of the fact that the boat was not being operated by the owners, a question might be raised as to whether they were supplies to the boat or merely to the charterers; but, as has been indicated, those items were apparently treated as all the others, both before the charter was terminated and the boats returned, at the bankruptcy of the Glen Island Company, and afterward. So I think that all four bills of items stand in exactly the same category, so far as the case is concerned.

As to the crosshead and the piston, Mr. Fletcher did communicate with the owner, and it appears, according to the charter, that the owner was obligated to make such repairs as that. The owner was also obligated to make such repairs as those to the boiler, and there was certainly ratification to the extent of approving of Mr. Fletcher's going ahead and making the repairs immediately, leaving the question of responsibility unaffected by the choice of the Fletcher Company, for the job.

Before the charter party was surrendered, specific claim was made to the owners for all four sets of items. The owners seem at that time to have recognized the fact that the credit was furnished to the vessel, and that whether or not the Glen Island Company was bound to them, under the charter, for any or all of these items, were questions between the owners and the Glen Island Company.

After the Glen Island Company went into bankruptcy, we have exactly the same situation presented as would have existed if Mr. Fletcher had then libeled the vessel and the ferry company had been confronted with the situation of claiming the vessel away from the possession of the Glen Island Company and from the process under the libel. If that situation had existed and the ferry company claimed the boat, took it subject to the liens that existed against the boat, and then made no claim against the Glen Island Company for anything except the rent—that is, hire—under the charter party, they would certainly estop themselves from any claim that the items in the bills were not furnished on the credit of the boat. So at the time of this conversation in November, the Glen Island Company being in bankruptcy, and no question then being raised, except as to the method of payment, it would seem that Mr. Mingey's statement that, if the Glen Island Company had paid these items out of the back hire for the boat, they would have had no dispute as to the items with the Fletcher Company, is further evidence that the ferry company was unfortunate because the Glen Island Company went into bankruptcy, so that they cannot reimburse themselves under their charter for any portion of the items that the Glen Island Company should pay; but I see no evidence in any of this that the ferry company did not recognize the obligation for the supplies furnished to the vessel, and there is an apparent admission that all the supplies were furnished to the vessel, and that the Glen Island Company was only a contract guarantor for such of them as were, within the terms of the charter, to be paid by the Glen Island Company.

The only other question is whether a notice was given to the Fletcher Company of the existence of a charter, so that any of these items were taken out of the category of being supplied on the credit of the vessel. I think that even under the charter (as I indicated at the beginning) the credit of the vessel might have been relied upon, and that the testimony does not show credit extended to either the chartering party or the owner, except in so far as Mr. Fletcher consulted with Mr. Waters about the crosshead and the piston. I therefore see no reason why the obligation, in the form of a lien against the vessel, is not valid for the entire amount, and why the ferry company should

not be left to such rights as they have against the Glen Island Company, if those have not been affected or lost in the course of the bankruptcy proceeding. So it seems to me to work out that it is a case of misfortune, rather than legal responsibility, so far as the charter affects the case.

I think the libelant may have a decree.